UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CALDREN CORP. LIMITED

                              Plaintiff,

-v-

NHL DEVELOPMENT CO. LTD. and HANWHA
CORPORATION

                              Defendants.

-------------------------------------------------------------------x

08 CV

**VERIFIED COMPLAINT**

08 CV 10216 (WHP)

      Plaintiff, CALDREN CORP. LIMITED (hereinafter "CALDREN"), by its

attorneys, CHALOS & CO, P.C., as and for its Verified Complaint against Defendants,

NHL DEVELOPMENT CO. LTD., (hereinafter "NHL") and HANWHA

CORPORATION, (hereinafter "HANWHA"), alleges upon information and belief as

follows:

<u>JURISDICTION</u>

      1.    The Court has subject matter jurisdiction by virtue that the underlying

claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of

this Court under 28 U.S.C. § 1333.

<u>THE PARTIES</u>

      2.    At all times material hereto, Plaintiff, CALDREN, was and still is a

foreign business with a principal place of business at 80 Broad Street, Monrovia, Liberia.

      3.    At all times material hereto, Defendant, NHL, was and still is a foreign

business entity with a principal place of business at 4 FL Mointer Building, #1675-12,

Seocho-Dong, Seocho-Gu, Seoul, Korea.

4.     At all times material hereto, Defendant, HANWHA, was and still is a foreign business entity with a principal place of business at Hanwha Building 22F, #1, Changgyo-Dong, Chung-Ku, Seoul, Korea

## FACTS AND CLAIM

5.     On July 14th, 2008, CALDREN, as owners of the M/T ELKA VASSILIKI, and HANWHA, as charterers, entered into an Asbatankvoy voyage charter party agreement for the carriage of fuel cargo from the loading port of Mina Abdullah, Kuwait, making additional loading stops at the ports of Shuaiba, Kuwait and Ras Laffan, Qatar, to the discharge port of Yosu, South Korea . *A copy of the fixture recap agreement is annexed hereto as Exhibit A.*

6.     This charter party agreement is a maritime contract.

7.     The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply.

8.     Pursuant to the terms and conditions of the agreement, on or about August 27, 2008, HANWHA nominated NHL to take over the charter party agreement as charterers.  HANWHA was to serve as guarantor for NHL'S total performance in all aspects of the voyage.  *A copy of the addendum to the fixture recap agreement is annexed hereto as Exhibit B.*

9.     Pursuant to the terms and conditions of the agreement, the charterers were to pay demurrage for excess laytime to CALDREN at a rate of USD $ 47,500.00 per day pro rata for both loading and discharging of cargo.

10.     The charter party provided for a total laytime of 84 hours during loading and discharging of the cargo.  Charterers used a total of 167:28:00 hours of laytime, resulting in demurrage of 83:28:00 hours, or 3.477 days.  *A copy of the Laytime Calculation is annexed hereto as Exhibit C.*

11.     Due to the delays at the loading and discharge ports, charterers have incurred demurrage liability in the amount of USD $163,129.51.  *A copy of the Demurrage Invoice is annexed hereto as Exhibit D.*

12.     As a result of the failure of Defendants NHL and HANWHA to fulfill their obligations in accordance with the parties' agreement, CALDREN has sustained damages in the principal amount of USD $163,129.51

13.     Despite repeated demands for payment, Defendants NHL and HANWHA have failed, neglected and/or refused to make payment of said sums due and owing to Plaintiff CALDREN.

14.     Pursuant to the terms of the charter party agreement, all disputes arising there under are to be submitted to London arbitration with English law to apply.  Plaintiff will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendants.

15.     This action is brought in order to obtain jurisdiction over Defendants and also to obtain security for Plaintiff's claims and in aid of London arbitration proceedings.

16.     English law, including but not limited to Section 63 of the English Arbitration Act of 1996, provides that a prevailing party is entitled to interest, costs and legal fees.

17.    As best as can now be estimated, the Plaintiff CALDREN expects to recover the following amounts in London arbitration from Defendants NHL and HANWHA:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | *$ 163,129.51* |
| B. | Estimated interest on Principal claim:<br>3 years at 7.5%, compounded quarterly | | *$ 40,736.11* |
| C. | Estimated attorneys' fees: | | *$ 100,000.00* |
| D. | Estimated arbitration costs: | | *$ 100,000.00* |
| | **Total Claim** | | **$ 403,865.62** |

20.    Therefore, CALDREN'S total claim for breach of the maritime contract against Defendants NHL and HANWHA is in the aggregate USD $403,865.62.

## BASIS FOR ATTACHMENT

21.    Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to, claimed by, or for the benefit of, the Defendants within this District held by various parties, as garnishees, including by not limited to electronic fund transfers.

22.    Plaintiff believes that some of these assets, to wit: accounts; bank accounts; monies; charter hire; credits; debts owed to the defendants; effects; payments for bunkers, cargo, goods or services; debts; unmatured debts; bills of lading; payments

from the purchasers of cargoes; freight and/or hire payments to or from owners of vessels, or charterers, to, from, or for the benefit of, Defendants and/or Clearing House Interbank Payment System (CHIPS) credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including, but not limited to, ABN AMRO BANK, American Express Bank, Bank of America, Bank of China, Bank of New York, Bank of Tokyo Mitsubishi UFJ Ltd., Barclay's Bank, BNP Paribas SA, Calyon, Calyon Financial, Inc., Citibank N/A, Credit Suisse Securities (USA) LLC, Deutsche Bank, HSBC (USA), JPMorgan Chase Bank, Mashreqbank, Societe Generale, Standard Chartered Bank, UBS AG, U.S. Bank, Wachovia Bank, Wells Fargo Bank, CHIPS and possibly other banks or financial institutions located in New York.

WHEREFORE, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing them to appear and answer under oath all, and singular, the matters alleged in the Verified Complaint;

B.     That since the Defendants cannot be found within the District, as set forth in the Declaration of George M. Chalos, and pursuant to Rule B and Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendants tangible or intangible property or any other funds held by any garnishees in the district which are due and owing, or other property of, or for the benefit of, the Defendants, up to the amount of USD $403,865.62

to secure and satisfy the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B and Rule E answer the matters alleged in the Complaint;

     C.     That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: Oyster Bay, New York
       November 24, 2008

<div style="margin-left: 40%;">

CHALOS & CO, P.C.
Attorneys for Plaintiff
CALDREN CORP. LIMITED

By: _____
George M. Chalos (GC-8693)
123 South Street
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (866) 702-4577
Email: gmc@chaloslaw.com

</div>

# EXHIBIT A

PLS FIND FIXTURE RECAP AS FOLLOWS:

```
MT ELKA VASSILIKI / HANWHA - CLEAN RECAP
========================================
```

WE ARE PLSD TO CONFIRM CHRTS LIFITNG ALL SUBJECTS TIMELY AND FOLLOWING
TERMS AND CONDITIONS ARE ALL IN ORDER WITH C/P DTD 14TH/JUL/2008.


// PRIVATE AND CONFIDENTIAL//

```
OWNER               : CALDREN COPRORATION LIMITED, MONROVIA.

CHARTERERS          : HANWAH COPORATION OR IT'S GUARANTEED NOMINEE

VESSEL              : ELKA VASSILLIKI

SDWT                : 94143 MT
SDFT                : 14.065 M
BUILT               : 2004
FLAG                : GREEK
LOA                 : 228.4 M
BEAM                : 42 M
KTM                 : 51.87 M
CGO CUB.CAP         : 110,442.6 CBM (98 PCT EXCL SLOPS)
                      SLOP CAP 2,949.5 CBM 98 PCT WHICH ARE AVAILABLE FOR CARGO
CLASS               : ABS
P AND I             : UK CLUB
IGS/SBT             : YES
COATING             : EPOXY
CRANE               : 1 X 20 TONS CRANE
LADEN SPEED         : ABT 13.5-14.0 KNOTS IN OWNERS' OPTION WSNP

LAST CARGO          : NAPHTHA
2ND LAST CARGO      : NAPHTHA
3RD LAST CARGO      : GASOIL

ITINERARY           : VSL CURRENTLY FREE IN FUJIAIRAH 16TH JULY 2008, OWNERS TO KEEP
                      CHRTRS INFORMED OF ITINERARY SHOULD AN INTERIM VOYAGE BE

PERFORMED

MAJOR APPROVAL      : TBOOK BHP/BP/ADNOC/SHELL/SATOIL

H&M VALUE           : USD 80 MILL

- CARGO             : PART CARGO MIN 75,000 MT CLEAN PETROLEUM PRODUCTS, UNLEADED,
                      UND 2.5 NPA, 1-2 GRADES WVNS NDFRTCAPMQS, ALWAYS EXCL. LUBES,
                      CHEMS, SOLVENTS, PENTANES, MTBE, PARAFFINIC NAPHTHA, PENTANE

PLUS,
```

```
  - LOAD              : 1-3 SP(S)AG EXCL. I/I

  - DISCH             : 1-3 SP(S) TAIWAN/SOUTH KOREA/JAPAN NNOBI KASHIMA

                        DISCHARGE TO BE IN GEO-ROTATION S-N EXCEPT IF WITHIN SAME
                        COUNTRY OR SKOREA/JPN IN COMBINATION.

  - LAYCAN            : 4TH AUGUST 2008 (00:01 - 23:59 HRS)

  - FREIGHT           : W/S 272.5 BASIS JAPAN,
                        W/S 277.5 BASIS SOUTH KOREA,
                        W/S 282.5 BASIS TAIWAN

                        W/S 2.5 POINT IF PARRAFFINIC NAPHTHA LOADED ON ALL RATES

                        IF COMBINATION OF RANGES THEN LOWER RATE TO APPLY
                        FREIGHT ALWAYS BASIS MIN 75,000 MT IRRESPECTIVE OF ACTUAL
                        QUANTITY LOADED DUE TO CARGO SG/LOADED TEMP.
```

- OVERAGE IN EXCESS OF 75,000 MT TO BE AT 50 PCT

- DEM 47,500 USD PDPR

- LAYTIME 84 HRS SHINC

- OWNERS HAVE THE OPTION TO PERFORM AN INTERIM VOYAGE WITH GASOIL, NAPHTHA, JET

- WS TERMS AND CONDITIONS

- ASBATANKVOY C/P

- Y/A RULES 1994 AS AMENDED

- GA/ARB IN LONDON UNDER ENGLISH LAW

- ANY TAXES AND/OR DUES ON FREIGHT AND/OR CARGO TO BE FOR CHRTS ACCOUNT

- DWT REMEASUREMENT CLAUSE : IF REQUESTED BY CHTRS, OWNER ARRANGE VESSEL'S DWT
  REMEASUREMENT, WHICH THE VESSEL HAS MULTI LOADLINE CERTIFICATE, WITH OWNER'S
  TIME/EXPENSES BUT ONE TIME ONLY. (THIS VOYAGE NEED MAX DWT LESS THAN 100,000MT)

- IF SKOREA DISCH, MAX 48HRS ANCHORAGE DUES TO BE FOR OWNS ACCOUNT
THEREAFTER CHRTS ACCOUNT AT EACH PORT.

- IN CASE THE VSL WAITED FOR CARGO DOCUMENTATION OVER THREE (3)
HOURS TIME AFTER VSL'S HOSES-OFF WHICH SAHLL BE COUNTED AS USED
LALYTIME, HOWEVER, ALWAYS THREE (3) HOURS ALLOWANCE SHALL BE FOR
CHTRS'FAVOUR.

- CONOCO WEATHER CLAUSE
DELAYS IN BERTHING FOR LOADING OR DISCHARGING AND ANY DELAYS AFTER
BERTHING WHICH ARE DUE TO WEATHER CONDITIONS SHALL COUNT AS ONE
HALF LAYTIME OR, IF ON DEMURRAGE, AT ONE HALF DEMURRAGE RATE.

- ISM CLAUSE
OWNER GUARNTEES THAT THIS VESSEL(S) COMPLIES FULY WITH THE ISM
CODE AND IS IN POSSESSION OF A VALID SAFETY MANAGEMENT CERTIFICATE
AND WILL REMAIN SO FOR THE ENTIRETY OF HER EMPLOYMENT UNDER THIS

CHARTER PARTY. OWNER WILL PROVIDE CHARTERER WITH SATISFACTORY
EVIDENCE OF COMPLIANCE IF REQUIRED TO DO SO AND WILL REMAIN FULLY
PESPONSIBLE FOR ANY DELAY AND EXPENSES ARISING DIRECTLY IN
CONNECTION WITH VESSELS NON-COMPLIANCE ABOVE.


- OWNERS WARRANT THAT THE VSL NOW IS AND THOUGHOUT THE DURATION OF
THIS CHARTER WILL BE OWNED OR DEMISE CHARTERED BY A MEMBER OF THE
INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION LTD. AND ENTERED
IN A P AND I CLUB.


- CHEVRON WAR RISK CLAUSES (AMENDED)
OWNERS SHALL PAY FOR THE ANNUAL WAR RISK INSURANCE. ANY ADDITIONAL WAR RISK
PREMIUMS AND CREW WAR BONUSES PAYABLE BY THE OWNERS FOR TRADING EXCLUDED AREAS
NOT COVERED BY OWNERS BASIC ANNUAL WAR RISK INSURANCE UNDER THIS CHARTER PARTY
ON THE INSURED VALUE OF USD 90 MILLION TO BE FOR CHRTRS ACCOUNT PAYABLE TOGETHER
WITH FREIGHT AFTER RECEIPT OF OWNERS INVOICE SUPPORTED BY A COPY OF THE INVICE
FROM THE WAR RISK UNDERWRITERS.
THE PERIOD FOR WHICH THE ADDITIONAL WAR RISK PREMIUM IS PAYABLE SHALL COMMENCE
WHEN THE VESSEL ENTERS A WAR RISK ZONE AS DESIGNATED BY THE LONDON INSURANCE
MARKET AND CEASE WHEN THE VESSEL LEAVES SUCH ZONE OR UPON REDELIVERY WHICHEVER
OCCURS FIRST.
IF THE VESSEL IS ALREADY IN SUCH A ZONE AT THE TIME OF FIXING CLEAN OR SUBJECTS
THE PERIOD SHALL COMMENCE ON TENDERING NOR UNDER THIS CHARTER PARTY AND CEASE
WHEN SHE LEAVES SUCH A ZONE OR UPON REDELIVERY WHICHEVER OCCURS FIRST.
ANY DISCOUNT OR REBATE REFUNDED TO OWNERS SHALL BE PASSED ONTO THE CHARTERERS
AND PREMIUM AND INCREASE THERETO ATTRIBUTABLE TO CLOSURE INSURANCE (I.E.
BLOCKING AND TRAPPING) SHALL BE FOR OWNERS ACCOUNT.


- LR2 POOL SAFE PORT CLAUSE
"WITHOUT PREJUDICE TO THE GENERALITY OF THE FOREGOING PROVISIONS
IT IS IN THIS CONTEXT MUTUALLY AGREED THAT THE MASTER AND/OR
OWNERS AT ANY TIME PRIOR TO ENTERING NOMINATED PORT(S) OR
ARABIAN GULF FOR LOAD/DISCHARGE OPERATIONS HAVE THE SOLE RIGHT
TO JUDGE WHETHER THE PORT(S) OR ARABIAN GULF AND/OR ACCESS
THERETO IS SAFE."


- BIMCO ISPS CLAUSE TO APPLY

LR2 POOL CLAUSES AMENDED AS FOLLOWS:

    1. Charterers' Style clause:

    ----------------------------

    1) Charterers' style            : HANWHA INTERNATIONAL(S) PTE LTD

    2) Domicile                     : 4 SHENTON WAY #15-05/06
                                      SGX CENTRE 2, SINGAPORE 068807

    3) Company Registered in        : SINGAPORE

    4) Company Registration number  :

    5) Full postal address          : HANWHA CORP.

                                      HANWHA BLDG 22F, #1, CHANGGYO-DONG

                                      CHUNG-KU, SEOUL, KOREA

                                      TEL : 82-2-729-3662

FAX : 82-2-729-3478

E-MAIL : backsick@hanwha.co.kr

PCI : MR. CHRIS YOON

6) Address for service of documents

   incl. demurrage claims if

   different to item no. 5 above :

   Person/Section in charge   : SAME AS NO.5

7) Name of MD or CEO (specify)  : MR. T. J. YANG

8) Name(s) and position(s)

   signatory/-ies to Loi (if/any): MR. I.S.Ryu/ DEPUTY MANAGER

      Tel  : 65-6227-2754

      E-mail: isryu@hanwha.com.sg

9) Name(s) and position(s) of person in charge/responsible for

   Chartering : MR. KEN HYUN / A. MANAGER

      Tel  : 82-2-729-3521   Aoh  :

      Mobile: 82-10-5121-8384   E-mail: kenhyun@hanwha.co.kr

   Operation  : MR. CHRIS YOON

      Tel  : 82-2-729-3662   Aoh  :

      Mobile: 82-11-294-5906   E-mail:backsick@hanwha.co.kr

## 2. CANCELLATION CLAUSE:
------------------------

IF IT BECOMES OBVIOUS TO THE OWNERS THAT THE VESSEL WILL NOT
MEET HER CANCELING DATE, OWNERS TO NOTIFY CHARTERERS OF VESSELS
ETA AND PROPOSED NEW CANCELING DATE. CHARTERERS HAVE THE OPTION
TO CANCEL THE CHARTER WITHIN 48HOURS WORKING DAYS OF NOTICE OR
EXTEND IN ACCORDANCE WITH OWNERS NEW PROPOSED CANCELING DATE. IF
CHARTERERS DECIDE TO CANCEL THE CHARTER, IT SHALL BE WITHOUT ANY
FURTHER LIABILITIES TO EITHER PARTY. IF CHARTERERS DO NOT CANCEL THE
CHARTER WITHIN 48HOURS WORKING DAYS AFTER RECEIPT OF OWNERS
NOTICE, THE CHARTER PARTY IS MAINTAINED ON BASIS OF THE NEW
CANCELING DATE PROPOSED BY THE OWNERS.

## 3. BILL OF LADING CLAUSE:
----------------------------

FOLLOWING WORDING PROVIDED ACCEPTANCE TO CHARTERER TO BE INSERTED IN ALL
ORIGINAL BILL OF LADING ISSUED AND PRESENTED TO MASTER: 'ALL TERMS,
CONDITIONS, LIBERTIES AND EXCEPTIONS OF THE CHARTER PARTY INCLUDING
THE ARBITRATION CLAUSE ARE HEREWITH INCORPORATED, AS PER CHARTER
PARTY DATED (MONTH/DAY/YEAR).' IF NOT ACCEPTABLE TO CHARTERER, MASTER WILL
ISSUE LETTER OF PROTEST.

4. SMALL CLAIMS PROCEDURE:
--------------------------
ENGLISH LAW:
------------
FOR DISPUTES WHERE THE TOTAL AMOUNT CLAIMED BY EITHER PARTY DOES NOT
EXCEED THE AMOUNT OF USD 50,000 THE ARBITRATION SHALL BE CONDUCTED
IN ACCORDANCE WITH THE SMALL CLAIMS PROCEDURE OF THE LONDON MARITIME
ARBITRATORS ASSOCIATION CURRENTLY IN FORCE.

5. LOI CLAUSE:
--------------
CHARTERERS TO SEND OWNERS LOI WORDING DIRECTLY TO ELKA SHIPPPING LONDON LTD ,
EMAIL: ELKA@ELKASHIPPING.COM

6. VOYAGE ORDERS:
-----------------
ALL VOYAGE ORDERS AND CHANGES TO SAME TO BE SENT ON TLX OR E-MAIL
NOT FAX. CHARTERERS ARE NOT ALLOWED TO COMMUNICATE DIRECTLY WITH
MASTER.

7. WORLDSCALE CLAUSE:
---------------------
WORLDSCALE TERMS AND CONDITIONS TO APPLY AND IF WORLDSCALE
WHEN CALCULATING FLAT RATE HAS NO MADE ALLOWANCE FOR PORT
COSTS THEN SAME TO BE FOR CHARTERERS ACCOUNT.

THE LUMPSUM FREIGHT SHALL NOT BE DEEMED A WAIVER OF OR A PREJUDICE
TO OWNERS RIGHTS TO CLAIM COMPENSATION FROM CHARTERERS IN ACCORDANCE
WITH THE PROVISIONS CONTAINED IN WORLDSCALE FOR CHARGES OTHER THAN
THOSE COVERED BY THE FLAT RATES.

8. LIGHTERAGE CLAUSE
--------------------
ANY LIGHTERAGE OPERATION TO TAKE PLACE IN ACCORDANCE WITH O.C.I.M.F.
SHIP TO SHIP TRANSFER GUIDE AND CHARTERERS ARE TO PROVIDE AND PAY
FOR SUITABLE FENDERS AND OTHER LIGHTERAGE EQUIPMENT. ALL TIME USED
FROM ARRIVAL LIGHTERAGE POSITION TO DISCONNECTING OF
CARGO HOSES TO COUNT AS LAYTIME OR DEMURRAGE IF ON DEMURRAGE
IRRESPECTIVE OF WEATHER CONDITIONS PLACE AND EQUIPMENT ALWAYS TO
MASTER'S APPROVAL.
MASTER TO HAVE THE RIGHT TO ORDER THE LIGHTERING VSL AWAY IF HE DEEMS
SO NECESSARY FOR VSL'S SAFETY. ANY EXTRA BUNKERS CONSUMED DURING THE
ABOVE OPERATION TO BE FOR CHRTRS' ACCT AND PAID TOGETHER WITH FREIGHT
AS PER MASTER'S STATEMENT AT PRICES AS PER COPY OF LAST BUNKER INVOICE


OTHERWISE, AS PER HANWHA CHEMICAL SPECIAL CLAUSE WITH FOLLOWING
AMENDMENTS :

-. HANWHA CHEMICAL SPECIAL CLAUSE

1. POSITION
INSERT '13.5 -14.0' KNTS IN OWNERS OPTION WSNP'

4. AMOCO CARGO RETENTION
DELETE 'DEDUCT FROM FREIGHT' AND INSERT 'CLAIM'
DELETE 'VOLUME OF' IN LINE
INSERT 'AND LIQUID' AFTER 'PUMPABLE' AND IN LINE

INSERT 'FIXED CARGO' AFTER 'VESSEL'S' IN LINE 5

5. BILL OF LADING AND L.O.I
INSERT END OF CLAUSE 'AND TO BE SENT DIRECTLY TO OWNERS OFFICE'

6. INERT GAS SYSTEM
ADD AT THE END OF THE 2ND PARAGRAPH: ALL TIME FOR DE-INERTING/RE-INERTING
CARGO TANKS AS PER ABOVE REQUEST TO BE FOR CHARTERERS' ACCOUNT AND TO COUNT
IN FULL AS LAYTIME OR TIME ON DEMURRAGE IF VSL IS ON DEMURRAGE.
ANY EXTRA BUNKERS CONSUMED IN CONNECTION WITH SUCH OPERATION TO BE FOR
CHRTARERERS' ACCOUNT AND PAID TOGETHER WITH FREIGHT AS PER MASTER'S STATEMENT
AT PRICES AS PER COPY OF LAST BUNKER INVOICE.

7. PUMPING
INSERT 'AVERAGE' BEFORE '100 PSI' AND 'EXCEPT STRIPPING BUT MAX
3 HOURS 'AFTER 100 PSI IN LINE 2.

10. LAYTIME

A) LAYTIME COMMENCEMENT
IN 2ND LINE CHANGE 3 HOURS BEFORE TO 2.5 HOURS AND 3RD LINE CHANGE
07:00HOURS TO 06:00 HOURS

C) AS PER MAIN TERM

F) LOADING PORT LAYTIME
REPLACE '1200HRS' BY '2400HRS'

11. DEMURRAGE TIME BAR
REPLACE 'FREIGHT, DEADFRGT AND OF/DEMURRAGE' TO
'DEMURRAGE OR OTHER EXPENSES FOR CHRTS ACCOUNT' IN LINE 1

DELETE LINE 4-5 'OF FINAL DISCHARGE....CLAIMS ARISES.'
INSERT '(FOR DEMURRAGE) OR 120 DAYS (FOR OTHER CLAIMS) AFTER
COMPLETION OF THE VOYAGE CONCERNED BUT THIS CLS DOES NOT REFER
ANY CARGO AND OR CARGO RELATED CLAIMS.'

13. PROTEST
INSERT 'IF POSSIBLE' AT THE END

14. PORT REQ.
INSERT 'TO THE BEST OF OWNERS KNOWLEDGE' IN BEGINING OF CLS.

15. PORT CHARGE : DELETE

16. AGENCY: OWNERS OPTN AT LOADPORT, CHRTS OPTN AT DISCHARGE PORT
BUT ALWAYS EXCLUDING WAN HO AND THEIR AFFICIATES IN TAIWAN

17. SHIPPING DOCUMENTS: DELETE

18. IN TRANSIT LOSS : DELETE

19. DEADFRGT : DELETE

22. PAYMENT : DELETE

24. ELIGIBILITY: DELETE "OWNER WARANTS THAT" INSERT "TO THE BEST OF OWNERS'
KNOWLEDGE"

25. WORLDSCALE REFERENCE - AS PER MAIN TERMS

26. TAXES ON FRGT - DELETE

27. DELETE "OWNER HEREBY GUARANTEES THAT" INSERT " TO THE BEST OF OWNERS' KNOWLEDGE "

29. OVERAGE INSURANCE : DELETE

30. WAR RISK : DELETE

32. DELETE

- COMMISSION  : TOTAL 3.75 PCNT
    1.25 PERCENT ADD COMMISSION ON FRT/DEM IS DEDUCTIBLE BY CHARTERERS.
    1.25 PERCENT COMMISSION ON FRT/DEM TO ACM LONDON.
    1.25 PERCENT COMMISSION ON FRT/DEM TO HANS SHIPPING


END RECAP
RGDS

# *HANWHA  CHEMICAL  SPECIAL  CLAUSE*

## 1. POSITION

OWNER WARRANTS THAT THE VESSEL'S POSITION AT THE TIME FIXTURE IS(     ) AND
VESSEL'S BALLAST SPEED WILL BE (     ) KNOTS WITH AN EXPECTED ETA BASIS (     ) OF
(     ).

## 2. ETA

MASTER AND/OR OWNER TO GIVE CHARTERER ETA LOADING PORT IMMEDIATELY AFTER
FIXING AND FURTHER ETA DISCHARGE PORT UPON SAILING FROM LOADING PORT.
MASTER AND/OR OWNER TO GIVE CHARTERER ADDITIONAL ETA OF SEVEN (7) DAYS
72/48/24/12 HOURS BEFORE ARRIVAL AT LOADING AND DISCHARGE PORT RESPECTIVELY.
ANY CHANGE EXCEEDING TWELVE (12) HOURS IN GIVEN ETAS TO BE CABLED
IMMEDIATELY AND ANY TIME LOST BY FAILURE TO COMPLY WITH REQUIRED ETA NOTICES
NOT TO COUNT AS LAYTIME, WHERE APPLICABLE.

## 3. ADHERENCE TO VOYAGE INSTRUCTIONS

IF A CONFLICT ARISES BETWEEN TERMINAL ORDERS AND CHARTERER'S VOYAGE
INSTRUCTIONS, MASTER IS TO STOP CARGO OPERATIONS AND TO CONTACT AT ONCE.
VESSEL IS NOT TO RESUME CARGO OPERATIONS UNTIL CHARTERER HAVE DIRECTED
VESSEL TO DO SO.

## 4. AMOCO CARGO RETENTION

IN THE EVENT THAT ANY CARGO REMAINS ON BOARD UPON COMPLETION OF DISCHARGE.
CHARTERER SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT AN AMOUNT EQUAL TO
THE FOB PORT TO LOADING VALUE OF SUCH A CARGO PLUS FREIGHT DUE WITH RESPECT
THERETO. PROVIDED THAT THE VOLUME OF CARGO REMAINING ON BOARD IS PUMPABLE
AND REACHABLE BY THE VESSEL'S PUMPS AS DETERMINED BY AN INDEPENDENT
SURVEYOR. ANY ACTION OR LACK OF ACTION IN ACCORDANCE WITH THIS PROVISION
SHALL BE WITHOUT PREJUDICE TO ANY RIGHTS OR OBLIGATIONS OF THE PARTIES.

## 5. BILL OF LADING AND LETTER OF INDEMNITY

IF THE ORIGINAL BILLS OF LADING ARE NOT PRESENTED BY CHARTERER AT THE
DISCHARGE PORT, CARGO TO BE RELEASED BY OWNER AGAINST A LETTER OF
INDEMNITY SIGNED BY CHARTERER. HOWEVER, THE WORDING OF SUCH LETTER OF
INDEMNITY TO BE IN OWNER'S P AND I CLUB WORDING WITHOUT BANK GUARANTEE.

## 6. INERT GAS SYSTEM

OWNER WARRANTS THAT THE VESSEL HAS A WORKING INERT GAS SYSTEM AND OFFICERS AND CREW ARE EXPERIENCED IN THE OPERATION OF THE SYSTEM. OWNER FURTHER WARRANT THE VESSEL WILL ARRIVE LOAD PORT WITH CARGO TANKS INERTED AND THAT TANKS WILL REMAIN INERTED THROUGHOUT VOYAGE AND DURING DISCHARGE UNLESS OTHERWISE INSTRUCTED BY CHARTERER.

MASTER MAY BE REQUESTED BY TERMINAL PERSONNEL OR INDEPENDENT INSPECTORS TO BREACH THE INERT GAS SYSTEM FOR PURPOSES OF GUANGING, SAMPLING TEMPERATURE DETERMINATION AND/OR DETERMINING THE QUANTITY OF CARGO REMAINING ON BOARD AFTER DISCHARGE.

MASTER SHALL COMPLY WITH THESE REQUESTS CONSISTENT WITH THE SAFE OPERATION OF THE VESSEL.

## 7. PUMPING

THE VESSEL SHALL DISCHARGE ENTIRE HOMOGENEOUS CARGO WITHIN TWENTY FOUR (24) HOURS OR MAINTAIN 100 P.S.I. AT SHIP'S RAIL PROVIDED SHORE FACILITIES PERMIT. IF THE VESSEL FAILS TO PERFORM AS ABOVE, AND DEMURRAGE INCURRED, AND PUMPING TIME IN EXCESS OF TWENTY FOUR (24) HOURS SHALL NOT COUNT AS USED LAYTIME. OWNER SHALL EXERT HIS BEST EFFORTS IN ACHIEVE FULL AND COMPLETE DISCHARGE OF CARGO.

## 8. CLEANING CLAUSE

VESSEL TO ARRIVE AT LOAD PORT WITH SEGREGATED CLEAN BALLAST ONLY.
OWNER GUARANTEES THAT THE VESSEL IS TO PRESENT AT LOAD PORT WITH TANKS, PIPES, AND PUMPS FULLY CLEAN TO CHARTERER'S/SHIPPER'S SATISFACTION. OTHERWISE ALL TIME/COST IN THIS RESPECT TO BE OWNER'S ACCOUNT.

## 9. SLOP OIL

LOAD ON TOP PROCEDURES IS NOT APPLICABLE AND NO FREIGHT ON SLOPS AND CHARTERPER NOT TO BE RESPONSIBLE FOR DISPOSAL OF SLOPS AT LOADING AND DISCHARGING PORTS.

## 10. LAYTIME

FURTHER TO THE RELEVENT CLAUSES OF THE CHARTER PARTY, LAYTIME TO BE CALCULATED BASED ON FOLLOWING CLAUSES :

**A)** LAYTIME COMMENCEMENT
IN CASE THE VESSEL ARRIVES AT QUARANTINE STATION AT DISCHARGE PORT AND TENDER N.O.R TO DISCHARGE BETWEEN 3 (THREE) HOURS BEFORE SUNSET AND 24:00 HOURS, LAYTIME TO COMMENCE AT 07:00 HOURS THE NEXT DAY.

**B)** DEBALLASTING/BALLASTING/SHIFTING TIME FROM ANCHORAGE TO BERTH NOT TO COUNT AS USED LAYTIME OR AS DEMURRAGE TIME EVEN IF LAYTIME HAS EXPIRED. SHIFTING FROM BERTH TO BERTH TO COUNT AS USED LAYTIME.

**C)** ANY WAITING TIME FOR BERTHING DUE TO WEATHER CONDITIONS/TIDE TO BE CONSIDERED BEYOND CHARTERER'S CONTROL AS STIPULATED IN CLAUSED 6 PART II OF THIS CHARTER PARTY (ASBATANKVOY) AND NOT TO COUNT AS USED LAYTIME.

**D)** ANY DELAY IN/WAITING FOR LADING/DISCHARGE DUE TO OWNER/MASTER/THE VESSEL'S CONDITIONS AND/OR FAULTS NOT TO COUNT AS USED LAYTIME.

**E)** CHARTERER SHALL HAVE TO BENEFIT OF SIX (6) HOURS FREE TIME FOR N.O.R FOR ALL PORTS EVEN IF THE VESSEL IS ON DEMURRAGE.

**F)** LOADING PORT LAYTIME
TENDER N.O.R TO BE MADE BETWEEN 0001 HRS ON THE FIRST DAY OF LAYCAN AND 1200 HRS ON THE LAST DAY OF LAYDAYS.
IF THE VESSEL IS CONSIDERED AS A LATE ARRIVAL CAUSED BY ARRIVAL AT OR AFTER 12:00 NOON ON LAST DAY OF LAYDAYS AND IS IMPOSED TO WAIT FOR THE PROPER TURN BY THE ORIGINAL SUPPLIER, LAYTIME SHALL BE COUNTED FROM COMMENCING LOADING.

## 11. DEMURRAGE TIME BAR

ANY CLAIM UNDER THIS CHARTER FOR FREIGHT, DEADFREIGHT AND OF/DEMURRAGE SHALL BE DEEMED WAIVED, EXTINGUISHED AND ABSOLUTELY BARRED, IF SUCH CLAIM IS NOT RECEIVED BY CHARTERER IN WRITING WITH SUPPORTING DOCUMENTATION WITHIN NINETY (90) DAYS OF FINAL DISCHARGE OF THE CARGO ON THE VOYAGE WITH RESPECT TO WHICH SAID CLAIMS ARISES.

## 12. SAMPLING

THE MASTER SHALL ASK SHIPPERS FOR SEALED SAMPLES OF CARGO LOADED WHICH WILL BE HANDED TO RECEIVERS AT DISCHARGING PORT(S), SHOULD SAMPLE NOT BE DELIVERED TO THE MASTER AT LOADING PORT(S), THE MASTER SHALL ISSUE A LETTER OF PROTEST TO SHIPPERS/RECEIVERS, COPY OF WHICH IS TO BE FORWARDED ON TO CHARTERER AS SOON AS POSSIBLE.

## 13. PROTEST

IN THE EVENT THAT VESSEL'S ONBOARD QUANTITY FIGURES AT THE LOADING PORT ARE LESS THAN BILL OF LADING FIGURES, A LETTER OF PROTEST SHALL BE ISSUED BY THE MASTER TO SUPPLIER/SHIPPER AND SHALL BE SIGNED BY THE AUTHORIZED PERSONNEL OF LOADING PORT TERMINAL.

## 14. PORT REQUIREMENT

OWNER WARRANT THAT VESSEL WILL COMPLY WITH ALL LOADING AND DISCHARGING PORT REQUIREMENTS CONCERNING SPECIFICATIONS OF VESSEL AND LOADING/DISCHARGING PROCEDURES AND WITH ANY APPLICABLE LAW OR PORT REQUIREMENTS.

## 15. PORT CHARGE

IN CASE VESSEL CALLS KOREAN PORT(S) AS LOADING OR DISCHARGING PORT(S), OWNERS SHALL PAY ALL DUES AND OTHER CHARGES ON THE VESSEL INCLUDING ANCHORAGE, DOCKAGE (WHARFAGE) IN ACCORDANCE WITH KOREAN PORT TARIFF.

## 16. AGENCY

OWNER AGREES TO APPOINT AGENTS NOMINATED BY CHARTERER AT DISCHARGING PORT AT OWNER'S EXPENSE. IN ANY CASE, CHARTERER SHALL NOT BE LIABLE FOR DAMAGE AND/OR LOSS OF TIME DUE TO ANY DISPUTE BETWEEN AGENTS AND OWNER.

## 17. SHIPPING DOCUMENTS

OWNERS SHALL GIVE FULL COORPERATION TO CHARTERER IN ISSUING SHIPPING DOCUMENTS. SUCH AS BILLS OF LADING, TIME SHEET, MAINFEST, AND ANY OTHERS IN A MANNER TO BE SATISFACTORY TO CHARTERER AS PER CHARTERER'S INSTRUCTION BUT CHARTERERS SHALL KEEP OWNER HARMLESS IN RESPECT OF ANY LIABILITY, LOSS OR DIRECT OR INDIRECT DAMAGE OF WHATSOEVER NATURE WHICH VESSEL/OWNER MAY SUSTAIN AS RESULT OF SUCH COMPLY.

## 18. IN-TRANSIT LOSS

OWNER WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF ANY IN-TRANSIT LOSS IF INTRANSIT LOSS EXCEEDS 0.5% AND CHARTERER SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT AN AMOUNT EQUAL TO THE FOB PORT OF LOADING VALUE OF SUCH LOST CARGO PLUS FREIGHT DUE WITH RESPECT THERETO.

IN-TRANSIT LOSS IS DEFINED AS THE DIFFERENCE BETWEEN NET VESSEL VOLUMES AFTER LOADING AT THE LOADING PORT AND BEFORE UNLOADING AT THE DISCHARGING PORT.

PUMPABLE CARGO SHALL NOT CONSTITUTE AN ACTUAL LOSS.

ANY ACTION OR LACK OF ACTION IN ACCORDANCE WITH THIS PROVISION SHALL BE WITHOUT PREJUDICE TO ANY RIGHTS OR OBLIGATIONS OF THE PARTIES.

## 19. DEADFREIGHT

NO DEADFREIGHT SHALL BE FOR CHARTERER'S ACCOUNT PROVIDED MINIMUM QUANTITY SUPPLIED. OWNER SHALL BE RESPONSIBLE FOR SHORT LOADING AND ANY CONSEQUENCES CAUSED BY VESSEL'S CONDITIONS.

## 20. GENERAL AVERAGE AND ARBITRATION

THE PLACE OF G/A AND ARBITRATION PROCEEDINGS TO BE LONDON UNDER ENGLISH LAW.

## 21. P AND C

ALL TERMS AND CONDITIONS OF THIS FIXTURE SHALL BE KEPT PRIVATE AND CONFIDENTIAL.

## 22. PAYMENT

PAYMENT OF FREIGHT SHALE BE MADE BY CHARTERER (OR ITS NOMINEE) IN U.S.DOLLARS TO OWNER'S DESIGNATED BANK WITHIN 5 (FIVE) BANKING DAYS AFTER COMPLETION OF DISCHARGE AND SHALL BE ALSO EFFECTED ONLY AFTER RECEIPT OF ORIGINAL CHARTER PARTY AND FREIGHT INVOICE DULY SIGNED BY OWNERS TOGETHER WITH OWNER'S TELEX INVOICE.

## 23. CLC CERTIFICATE

OWNER WARRANTS THE VESSEL HAS ON BOARD A VALID CERTIFICATE AS REQUIRED BY ARTICLE VII OF THE INTERNATIONAL CONVENTION ON CIVIL LIABILITY FOR OIL POLLUTION OF 1969 AS AMENDED. THE CHARTERER SHALL NOT BE LIABLE FOR ANY DEMURRAGE FOR DELAYS, EXPENSES OR DAMAGES RESULTING FROM NONCOMPLIANCE OF THIS CLAUSE.

## 24. ELIGIBILITY

OWNER WARRANTS THAT THE VESSEL IS IN ALL RESPECTS ELIGIBLE UNDER APPLICABLE LAWS AND REGULATIONS FOR TRADING TO THE PORTS AND PLACES SPECIFIED IN PART I, (C) AND (D), AND THAT AT ALL NECESSARY TIMES SHE SHALL HAVE ON BOARD ALL CERTIFICATES, RECORDS AND OTHER DOCUMENTS REQUIRED FOR SUCH AS SERVICE OWNER GUARANTEES THAT THE VESSEL IS FULLY EQUIPPED/SUITABLE FOR LOADING NAPHTHA AND/OR LIGHT NGL (A-180 ETC) AND ANY DELAY/EXPENSES CAUSED BY THE VESSEL'S FAILURE TO COMPLY WITH THIS CLAUSE TO BE FOR OWNER'S ACCOUNT.

## 25. WORLDSCALE REFERENCE

UNLESS OTHERWISE STATED IN THIS CHARTER PARTY, WORLDSCALE TERMS, CONDITIONS AND RATE AS PUBLISHED IN THE WORLDSCALE BOOK ON THE DATE OF THIS FIXTURE ARE TO APPLY TO THIS CHARTER PARTY.

## 26. TAXES ON FREIGHT

TAXES AND DUES ON FREIGHT AT LOAD PORT, IF ANY, TO BE FOR OWNER'S ACCOUNT.

**27.** OWNER HEREBY GUARANTEES THAT THE VESSEL IS NOT BLACKLISTED BY COUNTRIES WHICH LOAD/DISCHARGE PORT ARE LOCATED IN.

**28.** THE VESSEL SHALL COMPLY WITH INTERNATIONAL CHAMBER OF SHIPPING, OCIMF (OIL COMPANIES INTERNATIONAL MARINE FORUM) AND ISGOTT (INTERNATIONAL SAFETY GUIDE FOR OIL TANKERS AND TERMINALS) 1984.

## 29. OVERAGE INSURANCE

ANY EXTRA INSURANCE PREMIUM THAT MAY BE INCURRED DUE TO THE AGE, FLAG OR

OWNERSHIP OF VESSEL SHALL BE FOR OWNER'S ACCOUNT ON THE CONDITION THAT CHARTERER CAN PROVIDE TO OWNER SUFFICIENT DOCUMENTATION TO SUPPORT SUCH A CHARGE, SUCH ADDITIONAL PREMIUM, IF ANY, SHALL BE PAID BY OWNER TO CHARTERER'S DESIGNATED BANK ACCOUNT BY T/T WITHIN TWENTY (20) DAYS UPON RECEIPT OF CHARTERER'S INVOICE.

## 30. WAR RISK

WAR RISK INSURANCE PREMIUM AND AND/OR CREW WAR BONUS FOR THE MAX 14 DAYS WILL BE FOR OWNER'S ACCOUNT. ANY INCREASE AND/OR EXTENDED PERIOD FOR CHARTERER'S ACCOUNT.

**31.** YORK/ANTWERP RULES 1974 AS AMENDED 1990 TO APPLY.

**32.** REVISED P AND I TOVALOP CLAUSE IN 1987 TO APPLY.

EXHIBIT B

IT IS HEREBY AGREED BETWEEN OWNERS AND CHARTERERS THAT HANWHA CORP. HEREBY NOMINATE "NHL Development CO., LTD." AS THEIR NOMINEE AS PER PREVIOUS E MAILS.

"NHL Development CO., LTD." TAKE OVER THIS CHARTER PARTY FROM TODAY AND ACT AS CHARTERER OF THIS VOYAGE.

HANWHA GUARENTEE "NHL Development CO., LTD." PERFORMANCE IN ALL ASPECTS OF THIS VOYAGE.

ALL FURTHER TERMS AND CONDITIONS REMAIN UNCHANGED

REGARDS


++++

RE  : MT ELKA VASSILLIKI / HANWHA - CP DTD 14TH/JUL/2008
===============================================================

GOOD DAY!

FYG, HANWHA CORP. HEREBY NOMINATE "NHL Development CO., LTD." AS THEIR NOMINEE. "NHL Development CO., LTD." TAKE OVER THIS CHARTER PARTY FROM TODAY AND ACT AS CHARTERER OF THIS VOYAGE.

ALL OPERATION MATTERS INCLUDING FREIGHT PAYMENT, ISSUANCE OF LETTER OF INDEMINTY, SIGN OF CHARTER PARTY ETC WOULD BE PERFORMED BY NHL Development CO., LTD..

THEIR FULL STYLE AS FOLLOWS:-

/QTE/

1) Charterers' style : NHL Development Co.,Ltd
2) Domicile : 4FL MOINTER BLDG, #1675-12, SEOCHO-DONG,SEOCHO-GU, SEOUL, KOREA
3) Company Registered in : 1990, Korea
4) Company Registration number : 214-87-90515
5) Full postal address : 4FL MOINTER BLDG, #1675-12, SEOCHO-DONG,
                          SEOCHO-GU, SEOUL, KOREA (Zip code 137-070)
                          Tel : 82-2-3486-8426

```
                    Fax : 82-2-3486-6971
                    E-mail : 77kih@nhl-d.com
                    MR.IH KIM- A.MGR
6) Address for service of documents incl. demurrage claims if different
   to item no. 5 above :
   Person/Section in charge : same as no.5
7) Name of MD or CEO (specify) : PRESIDENT & CEO
                    JOONG SHIK YU
8) Name(s) and position(s)
   signatory/-ies to Loi (if/any) : S H Lee/ Managing Director
                    Business & Marketing Division
9) Name(s) and position(s) of person in charge/responsible for
   Chartering : MR.HS CHONG- G.MGR
   Tel   :     82-2-3487-8493        Aoh   :
   Mobile:   82-11-799-2412          E-mail: barikate@nhl-d.com

   Operation :  MR.IH KIM- A.MGR
   Tel   :   82-2-3486-8426          Aoh   :
   Mobile:   82-16-799-1329          E-mail: 77kih@nhl-d.com

/UNQTE/


B.RGDS
```

EXHIBIT C

**European Product Carriers Ltd.**

Date : 11/9/2008 14:33:

Page :1 of

## Laytime Calculation

| | |
|---|---|
| **Charterer :** NHL DEVELOPMENT CO., LTD. | |
| **Vessel :** ELKA VASSILIKI | **DW :** |
| **Voyage :** V811 | **B/L Quantity :** 72,983.723 | **Type :** Voyage Charter (V/C) |
| **C/P Form :** ASBATANKVOY | **C/P Quantity :** 75,000.000 |
| **C/P Date :** 14/07/2008 | |

**Time Allowed** 3.5 days

**Demurrage :** 47,500.00 USD/day for both Loading and Discharging

**Despatch :** 0.00 USD/day for both Loading and Discharging

---

**Loading Port : MINA ABDULLAH**                                         **Arrival Date :** 03/08/2008   17:45

| | |
|---|---|
| NOR Tendered | 04/Aug/2008 00:01:00 |
| Pilot on Board | 05/Aug/2008 02:45:00 |
| Berthed | 05/Aug/2008 04:55:00 |
| Commenced Loading | 05/Aug/2008 06:20:00 |
| Completed Loading | 05/Aug/2008 17:40:00 |
| Hoses Disconnected | 05/Aug/2008 18:10:00 |

**Time Used :**        33:03:00      hours   or   1.377083 days

**Loading Port : SHUAIBA**                                         **Arrival Date :** 05/08/2008   21:10

| | |
|---|---|
| NOR Tendered | 05/Aug/2008 21:10:00 |
| Pilot on Board | 06/Aug/2008 01:50:00 |
| Berthed | 06/Aug/2008 04:00:00 |
| Commenced Loading | 06/Aug/2008 09:40:00 |
| Completed Loading | 09/Aug/2008 19:00:00 |
| Hoses Disconnected | 09/Aug/2008 21:00:00 |

**Time Used :**        73:35:00      hours   or   3.065972 days

**Loading Port : RAS LAFFAN**                                         **Arrival Date :** 10/08/2008   21:20

| | |
|---|---|
| NOR Tendered | 10/Aug/2008 21:20:00 |
| Pilot on Board | 10/Aug/2008 21:55:00 |
| Berthed | 10/Aug/2008 23:45:00 |
| Commenced Loading | 11/Aug/2008 01:25:00 |
| Completed Loading | 11/Aug/2008 16:55:00 |
| Hoses Disconnected | 11/Aug/2008 17:10:00 |

**Time Used :**        17:10:00      hours   or   0.715278 days

**Discharging Port : YOSU**                                         **Arrival Date :** 01/09/2008   01:15

| | |
|---|---|
| NOR Tendered | 01/Sep/2008 01:15:00 |
| Pilot on Board | 02/Sep/2008 07:45:00 |
| Berthed | 02/Sep/2008 10:30:00 |
| Commenced Discharging | 02/Sep/2008 13:00:00 |
| Completed Discharging | 03/Sep/2008 17:30:00 |
| Hoses Disconnected | 03/Sep/2008 18:20:00 |

**Time Used :**        43:40:00      hours   or   1.819444 days

| | | | | |
|---|---|---|---|---|
| **Total Time Used** | 167:28:00 | hours | or | 6.977778 days |
| **Time Allowed :** | 84:00:00 | hours | or | 3.50 days |
| **Demurrage** | 83:28:00 | hours | or | 3.477778 days |

DEMURRAGE :  83.466667 hours  x  47,500.00 USD/day   =  **USD 165,194.44**

# EXHIBIT D

# *CALDREN CORP. LIMITED*

### *80 BROAD STREET,   MONROVIA – LIBERIA*

MESSRS,
NHL Development CO., LTD.

DATE : 11 / 09 / 2008

| INV. NR:   1407 D  /  08 |
|---|

# *DEMURRAGE  INVOICE*

| *DESCRIPTION OF CHARGES* | *USD* |
|---|---|
| <u>M/T ELKA VASSILIKI – "NHL"   C/P  14.07.2008</u><br><br>- LOADPORTS : MINA ABDULLAH / SHUAIBA / RAS LAFFAN<br>- DISPORT      : YOSU<br><br><br>TOTAL DEMURRAGE INCURRED:  83:28:00 HRS   OR:<br>3.477778 DAYS X USD 47,500.00 PDPR                   USD   165,194.44<br>LESS 1.25%  ADD. COMM.                          (USD     2,064.93)<br><br><br>             **DUE TO OWNERS :** |  <br><br><br><br><br><br><br><br>163,129.51 |
| (Say: USD ne hundred and sixty three thousand one hundred and twenty nine and fifty one cents) | |

E+OE

PLEASE REMIT BY TT  TO:

THE ROYAL BANK OF SCOTLAND PLC
P.O. BOX 450
5-10 GREAT TOWER STREET
LONDON EC3P 3HX
SWIFT CODE:RBOSGB2L
SORT CODE: 16–01–01

IN FAVOUR OF: CALDREN CORP. LIMITED
IBAN NR: GB97 RBOS 1663 0000 2995 57
ACC NR: CALCOR USD1

REF: M/T ELKA VASSILIKI – "NHL"   C/P  14.07.2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CALDREN CORP. LIMITED

|  | Plaintiff, | 08 CV |

-v-

|  |  | **VERIFICATION OF** |
| NHL DEVELOPMENT CO. LTD. and HANWHA | | **COMPLAINT** |
| CORPORATION, | | |
|  | Defendants. | |

------------------------------------------------------------------x

Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, Esq., declares under the penalty of perjury:

1.    I am a Member of the law firm of CHALOS & CO, P.C., counsel for the Plaintiff, CALDREN CORP. LIMITED herein;

2.    I have read the foregoing Verified Complaint and know the contents thereof; and

3.    I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

4.    The reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Oyster Bay, New York
        November 24, 2008

                        CHALOS & CO, P.C.
                        Attorneys for Plaintiff
                        CALDREN CORP. LIMITED

            By:         _____
                        George M. Chalos (GC-8693)
                        123 South Street
                        Oyster Bay, New York 11771
                        Tel: (516) 714-4300
                        Fax: (866) 702-4577
                        Email: gmc@chaloslaw.com